## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA,
## ATLANTA DIVISION

|  |  |
|---|---|
| ARTHUR OLSON,<br><br>Plaintiff,<br><br>vs.<br><br>FRONT YARD RESIDENTIAL CORPORATION, ROCHELLE R. DOBBS, LELAND ABRAMS, GEORGE G. ELLISON, MICHAEL A. ERUZIONE, LESLIE B. FOX, WADE J. HENDERSON, LAZAR NIKOLIC, and GEORGE WHITFIELD MCDOWELL,<br><br>Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Arthur Olson ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE AND SUMMARY OF THE ACTION

1.     This is an action brought by Plaintiff against Front Yard Residential Corporation ("Front Yard" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of

Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Front Yard will be acquired by Amherst Residential, LLC ("Amherst") through its affiliates BAF Holdings, LLC ("Parent") and BAF Sub, LLC ("Merger Sub") (the "Proposed Transaction").

2.     On February 18, 2020, Front Yard and Amherst issued a joint press release announcing they had entered into an Agreement and Plan of Merger dated February 17, 2020 (the "Merger Agreement") to sell Front Yard to Amherst. Under the terms of the Merger Agreement, each Front Yard stockholder will receive $12.50 in cash for each share of Front Yard common stock they own (the "Merger Consideration"). The Proposed Transaction is valued at approximately $2.3 billion.

3.     On March 23, 2020, Front Yard filed a filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Front Yard stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Front Yard management's financial projections; (ii) the data and inputs underlying the valuation analyses performed by the Company's financial advisor, Deutsche Bank Securities Inc. ("Deutsche Bank"); (iii) the background of the

Proposed Transaction; and (iv) Deutsche Bank's and Company insiders' potential conflicts of interest.  Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.    In short, unless remedied, Front Yard's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting decision on the Proposed Transaction.   Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.    This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.    Venue is proper in this District under Section 27 of the Exchange Act,

15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

8.     Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Front Yard.

9.     Defendant Front Yard is a Maryland corporation, with its principal executive offices located at c/o Altisource Asset Management Corporation, 5100 Tamarind Reef, Christiansted, United States Virgin Islands 00820.  Front Yard is an industry leader in providing quality, affordable rental homes to America's families in a variety of suburban communities that have easy accessibility to metropolitan areas.  Front Yard's common stock trades on the New York Stock Exchange under the ticker symbol "RESI."

10.     Defendant Rochelle R. Dobbs ("Dobbs") has been Chair of the Board since May 2018 and a director of the Company since December 2016.

11.     Defendant Leland Abrams ("Abrams") has been a director of the Company since June 2019.

12.     Defendant George G. Ellison ("Ellison") has been the Company's Chief Executive Officer ("CEO") since June 2015 and a director of the Company since August 2015.

13.     Defendant Michael A. Eruzione ("Eruzione") has been a director of the Company since December 2012.

14.     Defendant Leslie B. Fox ("Fox") has been a director of the Company since 2019.

15.     Defendant Wade J. Henderson ("Henderson") has been a director of the Company since April 2017.

16.     Defendant Lazar Nikolic ("Nikolic") has been a director of the Company since June 2019.

17.     Defendant George Whitfield McDowell ("McDowell") has been a director of the Company since March 2018.

18.     Defendants identified in paragraphs 10-17 are referred to herein as the "Board" or the "Individual Defendants."

### OTHER RELEVANT ENTITIES

19.     Amherst provides a full suite of products and services to both individual and institutional owners of residential real estate, creating a differentiated consumer experience and more efficient model for owning and managing real estate.  Since its

inception in 2012, Amherst and its affiliated funds have acquired and operated more than 30,000 homes.  With more than 850 employees in 29 markets across 20 states, Amherst has raised more than $5.5 billion of debt and equity capital to support its single-family rental portfolio since the platform's creation.  Amherst is the residential real estate division of Amherst Holdings, LLC.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

20.    Front Yard is a Maryland real estate investment trust ("REIT") and an industry leader in providing quality, affordable rental homes to America's families in a variety of suburban communities that have easy accessibility to metropolitan areas.  The Company operates in a single segment focused on the acquisition and ownership of residential rental properties.

21.    On August 8, 2018, the Company acquired a property management firm and began the process of internalizing its property management function.  During the first quarter of 2019, Front Yard completed the transfer of its externally managed homes to its internal property management platform.  The internalization of property management provides the Company with an efficient, scalable property management platform that is designed to provide tenants with excellent service.  As Front Yard continues to grow, this platform will allow the Company to benefit from economies

of scale that will enhance long-term stockholder value. Prior to this internalization, the Company relied exclusively on two external property management vendors to provide, among other things, leasing and lease management, operations, maintenance, repair and property management services in respect of certain single family residence properties.

22.     On February 28, 2020, the Company announced its fourth quarter and full year 2019 financial results. For the quarter, the Company increased rental revenue by 2.6% over the third quarter 2019, to $52.1 million. Net loss for the fourth quarter of 2019 improved to $25.5 million, or $0.47 per diluted share, compared to a net loss of $34.2 million, or $0.64 per diluted share, for the fourth quarter of 2018. Net loss for the year ended December 31, 2019 improved to $105.4 million, or $1.96 per diluted share, compared to a net loss of $130.8 million, or $2.44 per diluted share, for the year ended December 31, 2018. Commenting on the financial results, defendant Ellison stated, "Our fourth quarter numbers reflect the team's continued focus on improving the operating metrics and financial performance of our rental portfolio."

**The Proposed Transaction**

23.     On February 18, 2020, Front Yard and Amherst issued a joint press release announcing the Proposed Transaction, which states, in relevant part:

- 7 -

**AUSTIN, Texas and CHRISTIANSTED, U.S. Virgin Islands, Feb. 18, 2020** (GLOBE NEWSWIRE) -- Amherst Residential, LLC ("Amherst Residential"), a privately-owned, vertically-integrated real estate firm, and Front Yard Residential Corporation ("Front Yard" or the "Company") (NYSE: RESI), two industry leading providers of high-quality and affordable rental homes, announced today that the companies have entered into a definitive merger agreement, whereby Amherst Residential will acquire Front Yard in a transaction valued at approximately $2.3 billion, including debt to be assumed or refinanced.

Under the terms of the agreement, Front Yard shareholders will receive $12.50 in cash per share. The per share purchase price represents a premium of approximately 14.2% over the per share closing price of Front Yard's common stock on May 20, 2019, the day prior to the public announcement of Front Yard's decision to initiate a formal process to explore strategic alternatives.

"This transaction meaningfully advances our effort to improve the experience of residents and investors in single-family rental properties," said Sean Dobson, Chief Executive Officer and Chairman of the Board, Amherst Holdings, LLC. "With our expanded scale, additional team members in local markets and the collective experience of both teams, we believe this combination provides a powerful platform that is well positioned to serve the broad constituency focused on affordable, safe, attractive housing."

"We are excited to join forces with Amherst in a transaction that we believe is in the best interests of our shareholders, employees and residents," said George Ellison, Front Yard's Chief Executive Officer. "The transaction will deliver the certainty of immediate cash to our shareholders at a premium, and I am confident our platform and residents will benefit from being part of a larger, vertically-integrated organization. We look forward to completing this transaction and ensuring a seamless transition."

"This strategic acquisition grows our ability to optimize the ownership and utilization of U.S. single-family real estate. By combining with Front Yard, our increased scale will allow us to further enhance the services we provide to both individual consumers as well as our

investment partners," said Drew Flahive, President of Amherst Residential. "We know the Front Yard team well and are pleased to welcome them as we continue to execute our differentiated single-family real estate strategies."

"After a thorough strategic review process, we have decided to enter into this agreement with Amherst, which we believe maximizes value for our shareholders," said Rochelle R. Dobbs, Front Yard's Chairwoman of the Board of Directors. "Amherst is a leader in the industry and a natural, strategic fit with Front Yard."

Amherst Residential is a subsidiary of Amherst Holdings, a data-driven real estate investment firm with strategies across the residential and commercial real estate capital markets. The firm delivers a full suite of products and services to both individual and institutional owners of single-family real estate. This transaction will expand Amherst Residential's nationwide SFR portfolio to more than 36,000 homes. At closing, Amherst Residential affiliates and subsidiaries will acquire Front Yard's operating platform and assets, including approximately 15,000 SFR homes, currently managed by Front Yard's operator, HavenBrook Homes. Beginning at closing, HavenBrook Homes' operations will be integrated with Main Street Renewal LLC, Amherst Residential's in-house operating company and the collective organization will retain the Main Street Renewal brand.

The transaction is expected to close in the second quarter of 2020, subject to the approval of the holders of a majority of Front Yard's outstanding shares and the satisfaction of customary closing conditions.

## Insiders' Interests in the Proposed Transaction

24.   Front Yard insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public

stockholders of Front Yard.

25.     Notably, Company insiders stand to reap substantial financial benefits for securing the deal with Amherst.  Pursuant to the Merger Agreement, certain outstanding options and restricted stock awards ("RSU") will convert into the right to receive cash payments.  For example, the Company's non-employee directors will receive an aggregate of approximately $624,400 in connection with their unvested Company Director-Granted RSUs.  In addition, the following table sets forth the cash payments the Company's named executive officers stand to receive in connection with their outstanding equity awards:

| Name | Unvested Company Options | Vested Company Options | Unvested Company Service-Based RSUs (2)(a) | Unvested Company Market-Based RSUs (2)(b) | Total |
|---|---|---|---|---|---|
| George G. Ellison | $    0 | $738,000 | $2,001,100 | $2,772,347 | $5,511,447 |
| Robin N. Lowe | $    0 | $161,334 | $  548,815 | $  616,166 | $1,326,315 |
| Stephen H. Gray | $    0 | $161,334 | $  548,815 | $  616,166 | $1,326,315 |
| Michael G. Lubin | $    0 | $161,334 | $  548,815 | $  616,166 | $1,326,315 |
| Rene Dittrich | $    0 | $    0 | $  417,785 | $    0 | $  417,785 |

26.     Further, the Proxy Statement sets forth that certain Front Yard executive officers stand to receive "make-whole" bonuses upon consummation of the Proposed Transaction.  The Proxy Statement sets forth:

> The board of directors of the Company may determine to approve and cause the Company to pay bonuses upon the consummation of the Merger in an aggregate amount not to exceed $2,000,000 to the extent that certain employees of the Employer do not receive their 2019 bonuses from the Employer in the amounts set forth in their CIC Agreements or in the Company's Change in Control Severance Policy, as applicable. These employees include, among others, the following

four executive officers: Messrs. Ellison, Lubin, Gray and Lowe. Mr. Ellison and Rochelle Dobbs will have discretion to allocate the $2,000,000 among these employees consistent with the foregoing.

Proxy Statement at 54.

27.     Moreover, if they are terminated in connection with the Proposed Transaction, Front Yard's named executive officers stand to receive substantial cash severance payments in the form of Golden Parachute compensation as set forth in the following table:

| Name | Cash (1) | Equity (2) | Perquisites/ Benefits (3) | Total |
|------|----------|-----------|---------------------------|-------|
| George G. Ellison - Chief Executive Officer | $3,052,104 | $5,511,447 | $ 44,176 | $8,607,727 |
| Robin N. Lowe - Chief Financial Officer | $1,314,003 | $1,326,315 | $ 44,423 | $2,684,741 |
| Stephen H. Gray - Chief Administrative Officer and Senior Counsel | $1,376,640 | $1,326,315 | $ 64,682 | $2,767,636 |
| Michael G. Lubin - General Counsel and Corporate Secretary | $1,126,503 | $1,326,315 | $ 96,662 | $2,549,480 |
| Rene Dittrich - Chief Accounting Officer | $ 829,772 | $ 417,785 | $ 41,255 | $1,288,812 |

## **The Proxy Statement Contains Material Misstatements or Omissions**

28.     The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Front Yard's stockholders.  The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

29.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Front Yard management's financial

projections; (ii) the data and inputs underlying the valuation analyses performed by the Company's financial advisor, Deutsche Bank; (iii) the background of the Proposed Transaction; and (iv) Deutsche Bank's and Company insiders' potential conflicts of interest.

***Material Omissions Concerning Front Yard Management's Financial Projections***

30.     The Proxy Statement omits material information regarding Company management's financial projections.

31.     For example, the Proxy Statement sets forth that on June 12, 2019, Deutsche Bank presented "an analysis of the Company's standalone business plan based on projections that had been prepared by the Company's senior management" and a committee of the Board, referred to as the "Strategic Review Committee," "determined that the Company should further refine its five-year business plan." *Id.* at 28.  Then on July 25, 2019, "the Strategic Review Committee considered Deutsche Bank's revised analysis of the Company's standalone business plan, which had been updated to reflect the Company's financial results for the second quarter of 2019 . . . ." *Id.* at 29.  Additionally, on October 31, 2019, the Strategic Review Committee further "directed the Company's senior management to update the Company's standalone business plan to reflect the third quarter results." *Id.* at 31.  On November 10, 2019, Deutsche Bank presented to the Strategic Review Committee, among other

things, "a revised analysis of the Company's standalone business plan." *Id.* at 32.

32.     The Proxy Statement, however, fails to set forth the Company's five-year business plan utilized by Deutsche Bank at the June 12, 2019 meeting, the revised business plan utilized by Deutsche Bank at the July 25, 2019 meeting, and the further revised business plan utilized by Deutsche Bank at the November 10, 2019 meeting.

33.     The Proxy Statement also fails to disclose each of the line items underlying the free cash flows calculated by Deutsche Bank in its *Discounted Cash Flow Analysis* ("DCF"), including: (i) Adjusted EBITDA; (ii) capital expenditures; and (iii) capitalized leasing commission.

34.     The omission of this information renders the statements in the "Background of the Merger" and "Certain Financial Projections Utilized in Connection with the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Deutsche Bank's Financial Analyses***

35.     Additionally, the Proxy Statement describes Deutsche Bank's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of Deutsche Bank's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.   Without this

information, as described below, Front Yard's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Deutsche Bank's fairness opinion in determining whether to vote in favor of the Proposed Transaction.

36.     With respect to Deutsche Bank's *Analysis of Selected Publicly Traded Companies* and *Analysis of Selected Precedent Transactions*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the companies and transactions analyzed by Deutsche Bank, respectively.

37.     With respect to Deutsche Bank's *DCF*, the Proxy Statement fails to disclose: (i) the metric Deutsche Bank applied perpetuity growth rates to in order to calculate a range of terminal values for Front Yard, and quantification thereof; (ii) quantification of the Company's terminal values; and (iii) the number of shares of Front Yard stock outstanding used to calculate the range of implied present values per share.

38.     The omission of this information renders the statements in the "Certain Financial Projections Utilized in Connection with the Merger" and "Opinion of Deutsche Bank Securities Inc." sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background of the Proposed Transaction***

39.    The Proxy Statement fails to disclose material information concerning the background of the Proposed Transaction.

40.    For example, the Proxy Statement sets forth that Front Yard entered into confidentiality agreements with the interested bidder referred to in the Proxy Statement as "Party B" and 32 potential buyers contacted by Deutsche Bank during the sale process. *Id.* at 28-29.  Yet, the Proxy Statement fails to disclose whether the confidentiality agreements executed by potential buyers include "don't-ask, don't-waive" ("DADW") standstill provisions that are presently precluding any of these potential buyers from submitting a topping bid for the Company.

41.    The failure to disclose the existence of DADW provisions creates the false impression that any of the potential buyers who entered into confidentiality agreements could make a superior proposal for the Company.   If those confidentiality agreements contain DADW provisions, then those potential buyers can only make a superior proposal by (i) breaching the confidentiality agreement—since in order to make the superior proposal, they would have to ask for a waiver, either directly or indirectly; or by (ii) being released from the agreement, which if action has been done, is omitted from the Proxy Statement.

42.    Any reasonable Front Yard stockholder would deem the fact that the most likely topping bidders for the Company may be precluded from making a

topping bid for the Company to significantly alter the total mix of information.

43.    The omission of this information renders the statements in the "Background of the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Deutsche Bank's and Company Insiders' Potential Conflicts of Interest***

44.    The Proxy Statement fails to disclose the potential conflicts of interest faced by the Company's financial advisor, Deutsche Bank.

45.    The Proxy Statement sets forth that Front Yard has agreed to pay Deutsche Bank, among other fees, "an additional fee of $2,000,000, payable at the sole discretion of the Board based on its assessment of Deutsche Bank's performance of its services pursuant to the engagement letter." *Id.* at 51.  The Proxy Statement fails to disclose whether the Board intends to pay this additional fee and under what circumstances.

46.    Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

47.    The Proxy Statement further fails to disclose material information concerning the potential conflicts of interest faced by Company insiders.

48.    For example, in the February 18, 2020 press release announcing the

Proposed Transaction, Amherst's President Drew Flahive commented, "[w]e know the Front Yard team well and are pleased to welcome them as we continue to execute our differentiated single-family real estate strategies." The Proxy Statement, however, fails to disclose the specific details of all employment and retention-related discussions and negotiations that occurred between Amherst and Front Yard executive officers and directors, including who participated in all such communications, when they occurred and their content. The Proxy Statement further fails to disclose whether any of Amherst's proposals or indications of interest mentioned management retention, consulting arrangements, cash, stock and co-investment opportunities, or equity participation in the combined company.

49.     Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

50.     The omission of this material information renders the statements in the "Opinion of Deutsche Bank Securities Inc.," "Background of the Merger" and "Interests of Directors and Executive Officers in the Merger" sections of the Proxy

Statement false and/or materially misleading in contravention of the Exchange Act.

51.    The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other Front Yard stockholders will be unable to make an informed voting decision on the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

52.    Plaintiff repeats all previous allegations as if set forth in full.

53.    During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

54.    By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy

Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about Front Yard management's financial projections, the data and inputs underlying the valuation analyses performed by the Company's financial advisor, Deutsche Bank, the background of the Proposed Transaction, and Deutsche Bank's and Company insiders' potential conflicts of interest   The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

55.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

56.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

57.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

58.     Plaintiff repeats all previous allegations as if set forth in full.

59.     The Individual Defendants acted as controlling persons of Front Yard within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Front Yard, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

60.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

61.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular

transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy Statement.

62.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

63.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

64.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Front Yard's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent

relief, including injunctive relief, in his favor on behalf of Front Yard, and against defendants, as follows:

A.   Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Front Yard stockholders;

B.   In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.   Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.   Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.   Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.


Dated:  April 14, 2020                          **WEISSLAW LLP**


                                                /s/ *Michael A. Rogovin*
                                                Michael A. Rogovin
                                                Georgia Bar No. 780075
                                                476 Hardendorf Ave. NE
                                                Atlanta, GA 30307
                                                Tel.: (404) 692-7910
                                                Fax: (212) 682-3010
                                                mrogovin@weisslawllp.com


                                                *Attorneys for Plaintiff*